UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE  DIVISION

BRIAN WHITE,                           )
               Plaintiff,           )
                         )
     vs.                                 )                3:04-cv-78 RLY/WGH
                         )
ALCOA, INC.,                           )
              Defendant.          )

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Brian White has filed suit against Defendant Alcoa, Inc., alleging

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq.  White is

a white male who applied for the position of Plant Protection Officer/Paramedic with

Alcoa.  He alleges that he was denied employment when Alcoa hired a less qualified

female candidate.  The matter is now before the court on Alcoa's Motion for Summary

Judgment.  For the following reasons, Alcoa's motion is **denied**.

**I.      Background**

Alcoa had an opening for a Plant Protection Officer in July 2003.  (*See* Ex. 2,

posting notice and requirements for the job).  Harold Grossman, the Plant Security

Supervisor and hiring manager for the Plant Protection Officers worked with the Human

Relations Department ("HR") to develop the newspaper advertisement for the position.

(Purvis Dep. 18).   The advertisement read as follows:

1

PLANT PROTECTION OFFICER/PARAMEDIC
You'll be responsible for providing medical, fire, HAZMAT and rescue emergency services; as well as plant security and fire protection.  Qualified applicant will be an Indiana-certified EMT-P with high school diploma/GED and superior professionalism, including attention to detail, tenacity in difficult situations, strong interpersonal/communication skills, solid focus on customers and safety, forward thinking mindset with good sense of judgment, and ability to work in a diverse, high-performance team setting.  Certified firefighter or law enforcement officer and 10 years of firefighting experience are strongly preferred.

Grossman then created a spreadsheet to use as a screening tool to decide which applicants would be interviewed by phone.  (Ex. 21).  He interviewed five candidates by phone: Anthony Schneider, Oscar Ross, Brian White, Roger Godbehere, and Tracee Evans.  (Grossman Dep. at 27).  Roger Godbehere withdrew from the process at the phone interview stage.  (Grossman Dep. at 28).  The remaining four candidates had successful phone interviews, were found to meet the posted qualifications for the position, and proceeded to the in-person interview stage.[1]

The candidates were interviewed in-person by Grossman and his four Plant Protection Team Leaders, James Greer, Jeffery Richardt, Kathy Rodocker, and Richard Barnes.  The interviewers made notes on interview guide forms and assigned each candidate a score.  (Exs. 4, 11, 16, 19, 25).  The total scores for each candidate were: Anthony Schneider, 278; Brian White, 270; Tracee Evans, 264; and Oscar Ross, 259.

---

[1] White disputes Evans' qualifications for the job because she did not have ten years of firefighting experience.  (*See* White Dep. at 70-80).  The plain language of the advertisement indicates that ten years of firefighting experience is strongly preferred, not required.  All of the candidates who were interviewed in person met the basic qualifications for the job.  (Grossman Dep. at 131; Barnes Dep. at 13).

2

(Ex. 1).

Following the scoring, the interviewers gathered as a group to discuss the candidates and give them final rankings. The group came to a consensus, ranking the candidates as: (1) Anthony Schneider; (2) Tracee Evans; (3) Brian White; and (4) Oscar Ross. (Ex. 1). All of the interviewers agreed upon the final rankings. (Grossman Dep. at 97).

Meanwhile, Melissa Purvis, an HR Specialist, determined that women were underutilized for the Service Workers Equal Employment Opportunity category, which includes Plant Protection Officers. (Ex. 29). Colleen Martin, HR Manager, then advised Purvis that if there was an opportunity to hire a qualified female, they should do so. (Martin Dep. at 55). Purvis spoke with Grossman prior to the in-person interviews, and she advised him that if he determined that all of the candidates were qualified, they "would have to be seriously looking at that [female] candidate." (Purvis Dep. at 42).

Grossman presented the interviewers' final rankings to the HR department, explaining that Schneider was their first choice, but that all of the candidates were qualified. (Martin Dep. at 90). Martin wanted Grossman to hire Evans instead of Schneider. (Martin Dep. at 51-51). When she chose Evans, Martin did not know the details of the applicants' qualifications, did not know who had interviewed best, and did not look at the hiring team's scores. (Martin Dep. at 55, 59-60, 90, 109). Grossman resisted hiring Evans, but after speaking with Donna Toothman, Manager of Safety, Health, and Plant Protection, he agreed to offer Evans the position. (Toothman Dep. at

20, 22; Grossman Dep. at 106-07).  Ultimately, Grossman "got to hire among his

qualified pool, but . . . he didn't get to hire who he wanted to hire."  (Martin Dep. at 52).

## II.    Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if it is outcome determinative.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine "only

when a reasonable jury could find for the party opposing the motion based on the record

as a whole."  *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

When deciding whether a genuine issue of material fact exists, the court must

"draw all inferences in the light most favorable to the non-movant.  But in so doing, we

draw only reasonable inferences, not every conceivable inference."  *DeValk Lincoln*

*Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987) (internal citation

omitted).  The moving party bears the burden of demonstrating the "absence of evidence

on an essential element of the non-moving party's case."  *Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986).  The non-moving party may not, however, simply rest on the

pleadings, but must demonstrate by specific factual allegations that a genuine issue of

material fact exists for trial.  *Celotex*, 477 U.S. at 322.

### III.    Analysis

Alcoa argues that it is entitled to summary judgment on three grounds: (1) there are legitimate, non-discriminatory reasons for not hiring White, and there is no evidence of pretext; (2) White would not have been hired "but for" the alleged discrimination; and (3) White's damages are speculative.

Regarding nondiscriminatory reasons for not hiring White, Alcoa "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 725 (7th Cir. 2005) (internal citations omitted). Alcoa's alleged reasons for not hiring White were that, according to the interviewers, he did not seem to want the job as badly as Evans and did not seem to care whether he got the job. (*E.g.*, Greer Dep. at 19). The interviewers also had concerns about how White would transition from his position as a leader at Warrick County EMS to a position as a team member at Alcoa. (Grossman Dep. at 64). These reasons are unconvincing.

While the interviewers would have preferred to hire Schneider over Evans and Evans over White, (Ex. 1), the record shows that HR ignored the interviewers' preferences and the information gathered during the interview process. Since that information played no role in the ultimate hiring decision, Alcoa cannot rely on the interviewers' preferences to create a legitimate, non-pretextual reason why White was not hired. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973).

5

Similarly, Alcoa's argument that White would not have been hired "but for" the alleged discrimination fails.  Alcoa claims that but for the alleged discrimination, Schneider would have been hired, not White.  Again, Alcoa relies on the ranking generated by the interviewers, but those rankings were ignored by HR.  The evidence at this stage supports a reasonable inference that HR would have ignored the interviewers' rankings, even in the absence of a female candidate for the position.  Thus the court cannot find, as a matter of law, that White would not have been hired in the absence of discrimination.[2]

Finally, Alcoa's argument that White's damages are speculative does not warrant summary judgment.  White will have difficulty establishing his damages, but they are not entirely speculative, in that he has claimed liquidated damages, punitive damages, interest, and attorneys fees, in addition to employment wages and benefits.

---

[2] Likewise, the court disagrees with Alcoa's position that there are arguments and evidence that would be relevant to Schneider that are irrelevant to White.  *See* Alcoa's Reply Memorandum at 11-12.  Alcoa argues that its affirmative action plan would be a defense to charges brought by Schneider; however, apparently believing that its other arguments will prevail, Alcoa does not explain how the affirmative action plan could apply to White's case.  In the absence of such an explanation, White's claim survives summary judgment.

**IV.    Conclusion**

There is a question of fact regarding whether Alcoa's hiring of Evans over White

was discriminatory.  Alcoa's Motion for Summary Judgment is **denied**.


Dated:  March 27, 2006.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Electronic copies to:

William V. Conley
LEBOEUF LAMB GREENE & MACRAE LLP
wconley@llgm.com

B. Michael Macer
LOCKYEAR & KORNBLUM
mmacer@lockyear-kornblum.com

Melissa G. Szefi
LEBOEUF LAMB GREENE & MACRAE LLP
mszefi@llgm.com

Brent R. Weil
KIGHTLINGER & GRAY
bweil@k-glaw.com